UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ROBERT KANDO,<br>Plaintiff,<br><br>v.<br><br>RHODE ISLAND STATE BOARD OF<br>ELECTIONS, et al.,<br>Defendants. | C.A. No. 16-511-M-LDA |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Robert Kando was the Executive Director of the Rhode Island Board of Elections ("Board"). That position was expressly designated as unclassified by statute. R.I. Gen. Laws § 36-4-2(12). As an unclassified employee, Mr. Kando served at the pleasure of his appointing authority, who could terminate him without cause or process. For the last few years, Mr. Kando's tenure was fraught with controversy and eventually the Board terminated his employment. The Board had a brief change of heart, offering him a chance to have his termination reconsidered if he met several conditions. According to his complaint, Mr. Kando made efforts to comply with the terms, but the Board ultimately decided again to terminate his employment. It is this termination, and the process that surrounded it, that forms the basis for Mr. Kando's suit.

Mr. Kando brings four claims - one federal claim and three state law claims: (1) violation of Due Process under 42 U.S.C. § 1983; (2) violation of the Rhode Island

Open Meetings Act; (3) violation of due process under the Rhode Island Constitution; and (4) violation of the Rhode Island Whistleblower Protection Act. The Board filed a motion for judgment on the pleadings, arguing that Mr. Kando's complaint fails to allege plausible entitlement to relief.

## FACTS[1]

Mr. Kando began his tenure as Executive Director of the Board in August of 2005. His tenure for his first eight years was "largely uneventful" wherein he provided "loyal, dedicated, and effective service" to the Board. ECF No. 12 at ¶ 18. However, "changes to the Board [membership] and personality conflicts lead to [him] becoming the focal point of Board dissatisfaction relative to numerous matters, often ones [Mr. Kando] had little, if anything, to do with or control over." *Id.* The relationship between the staff and the Board members became so volatile that in December 2015, Mr. Kando and another employee asserted a complaint alleging violence in the workplace against Vice-Chair of the Board, Defendant Stephen P. Erickson. *Id.* at ¶ 19. Sometime prior to January 2016, the Board fired Mr. Kando.[2] *Id.* at ¶ 20.

---

[1] The Court takes all plausible facts alleged in Mr. Kando's complaint as true and in the light most favorable to him for purposes of deciding a motion for judgment on the pleadings. *Elena v. Municipality of San Juan*, 677 F.3d 1, 5 (1st Cir. 2012) (the court must "tak[e] all the complaint's well-pled allegations as true and view[] the other pleadings in the light most favorable to the plaintiffs.")

[2] The date and the circumstances surrounding the initial firing are unclear in the papers before the Court. The only allegation in the Amended Complaint is that there was a "previous termination" of Mr. Kando sometime before January 11, 2016. ECF No. 12 at ¶ 20.

Mr. Kando does not challenge this previous termination. Rather he alleges that on January 11, 2016, the Board voted that his "previous termination was null and void and mandated that Plaintiff 'enroll in the next three semesters of management courses at an education facility of his choice . . . and [that] there will be a review at the end of the third semester of Plaintiff's working relationship with the Board and that of his role as Executive Director for the [Board].'" *Id.* By this compromise, Mr. Kando alleges that there was an agreement that he "would be reevaluated after three semesters and that so long as he enrolled in, studied, and took management courses, any prior controversy or issue would not impact his continued employment, at least until said reevaluation." *Id.* at ¶ 22. It is this agreement made at the January 11, 2016 Board meeting that Mr. Kando asserts established a property interest in his employment thereby affording him constitutional due process protection.

At the January 11th meeting, the Board did not set a deadline for Mr. Kando to complete the management courses or a date for his reevaluation. However, Mr. Kando received a letter from the Board on January 19, 2016 indicating that he had to start classes in January. *Id.* at ¶¶ 23-24. This deadline, he alleges, was set through a series of emails among Board members, a private exchange that Mr. Kando alleges was in violation of the Open Meetings Act. *Id.* at ¶¶ 25-27.

At the next Board meeting on March 16, 2016, Mr. Kando conceded that he had not enrolled in classes by the January 31st deadline – although at the time of the March 16th meeting, he had enrolled. *Id.* at 4, ¶¶ 28-29. He alleges that the Board

3

set a deadline that was impossible to meet because the semester had already started at the time of the January 11th meeting. *Id.* at ¶¶ 30-32. Because of his failure to timely enroll in the management classes, the Board suspended him for six weeks without pay. *Id.* at ¶ 33. The Board then convened a special meeting on August 31, 2016, to which it gave Mr. Kando two days' notice and no opportunity to effectively prepare for the meeting. *Id.* at ¶¶ 36, 38-40. The Board voted to terminate Mr. Kando, even though he was enrolled in management classes and performing his job duties. *Id.* at ¶ 43. Mr. Kando alleges that throughout this process, the Board defamed and tarnished his reputation and acted with willful indifference to his rights. *Id.* at ¶¶ 46-49. Because of his termination and treatment by the Board, Mr. Kando filed this suit. The Defendants move to dismiss the complaint. ECF No. 28.

## STANDARD OF REVIEW

The Court reviews a motion for judgment on the pleadings under a similar standard as a Rule 12(b)(6) motion. *Downing v. Globe Direct LLC*, 682 F.3d 18, 22 (1st Cir. 2012). "[A] 'court may not grant a defendant's Rule 12(c) motion unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Curran v. Cousins*, 509 F.3d 36, 43 (1st Cir. 2007) (quoting *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988)).

## DISCUSSION

A. Due Process Violation Under § 1983

As it is the only federal claim in Mr. Kando's complaint, the Court will first address his due process claim under 42 U.S.C. § 1983. "In order for [a] plaintiff[] to have procedural due process rights in [his or her] employment, each plaintiff must

4

have had a reasonable expectation, based on a statute, policy, rule, or contract, that he or she would continue to be employed." *Concepcion Chaparro v. Ruiz-Hernandez*, 607 F.3d 261, 264 (1st Cir. 2010) (citing *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 101 (1st Cir. 2002)). A review of the facts alleged establishes that Mr. Kando cannot prove that he had a reasonable expectation in his continued employment and, as such, he had no due process protection.

According to state statute, Mr. Kando was an unclassified state employee. Rhode Island Gen. Laws § 36-4-2(a)(12) provides:

> The classified service shall comprise all positions in the state service, now existing or hereinafter established, except the following specific positions which, with other positions heretofore or hereinafter specifically exempted by legislative act, shall constitute the unclassified service: *** (12) Election officials and employees.

In addition to the "unclassified employee" designation in the Title 36 statutory provision quoted above, R.I. Gen. Laws § 17-7-6, pertaining to the State Board of Elections, provides:

> The members of the state board [of elections], its secretary, assistants, and appointees, shall not be subject to the provisions relating to the state merit system, but shall be in the unclassified service and shall come under the regulations of the unclassified pay plan board.

The person referred to as the Board Executive Director, in this case Mr. Kando, is actually the "secretary" of the Board, and is therefore an unclassified employee pursuant to Title 17 as well.

Unclassified employees serve at the pleasure of their appointing authority. *Lynch v. Gontarz*, 386 A.2d 184, 187 (R.I. 1978). "The law in Rhode Island is clear that employees such as plaintiff 'who are hired for an indefinite period with no

5

contractual right to continued employment are [considered] at-will employees [who are] subject to discharge at any time for any permissible reason or for no reason at all.'" *Galloway v. Roger Williams Univ.*, 777 A.2d 148, 150 (R.I. 2001) (quoting *DelSignore v. Providence Journal Co.*, 691 A.2d 1050, 1051 n. 5 (R.I. 1997)); *see also Pacheo v. Raytheon Co.*, 623 A.2d 464, 465 (R.I. 1993) ("[i]t is not the role of the courts to create rights for persons whom the Legislature has not chosen to protect"). "[A]n unclassified state employee serving at the pleasure of his appointing authority, ... [cannot] claim, under state law, a legitimate entitlement to continued employment absent cause and, thus, [does] not possess a property interest requiring procedural due process protections." *Salisbury v. Stone*, 518 A.2d 1355, 1360 (R.I. 1986).

Mr. Kando concedes that he was an unclassified employee,[3] and that the Board had a right to terminate him without cause prior to the January 11th meeting. However, he alleges that the Board made promises, akin to a unilateral contract, to let him keep his job on certain conditions that created a legitimate claim of entitlement to his employment and therefore he invokes due process protections. The Board argues that Mr. Kando remained an at-will, unclassified employee and the state could terminate his employment as such. It argues that it did nothing to create a property interest in Mr. Kando's position.

"In order to establish a constitutionally-protected property interest, a plaintiff must demonstrate that []he has a legally recognized expectation that []he will retain

---

[3] Mr. Kando admits that the Board could have fired him outright, acknowledging that he was an unclassified employee until January 11, 2016.

h[is] position. A legitimate expectation of continued employment may derive from a statute, a contract provision, or an officially sanctioned rule of the workplace." *Santana v. Calderon*, 342 F.3d 18, 24 (1st Cir. 2003) (citing *Perry v. Sindermann*, 408 U.S. 593, 601–02 (1972)); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985) (state statutory law); *Mercado Vega v. Martinez*, 692 F. Supp. 36, 42 (D.P.R. 1988), *aff'd*, 879 F.2d 852 (1st Cir. 1989) (collective bargaining agreements); *Board of Regents v. Roth*, 408 U.S. 564, 578 (1972) (employment contracts).

*1. Property Interest by Statute*

Mr. Kando cannot argue that he had a legally recognized expectation established by statute that he would retain his job. No statute gives Mr. Kando a property interest in his employment; in fact, it is quite the opposite because the statutes designated him as an unclassified employee as described above.

*2. Property Interest by Contract*

Mr. Kando asserts that there was an implied contract governing the terms of his employment with the Board that would give him a property interest. "'It has been said that a contract implied in fact must contain all the elements of an express contract. So, such a contract is dependent on mutual agreement or consent, and on the intention of the parties: and a meeting of the minds is required." *Bailey v. West*, 249 A.2d 414, 416 (R.I. 1969) (quoting 17 C.J.S. Contracts § 4 at pp. 557-560)).

According to Mr. Kando's allegations and argument, there was no mutual agreement here so no contract could have formed. Mr. Kando did not consent to the Board's time period – he instead argued that it was an impossible start deadline,

7

made evident by the fact that he could not start the classes before January 31st. Nevertheless, Mr. Kando argues that he made an implied contract with the Board that if he took the classes within the prescribed period, he would get his job back – or at least that no negative employment action would be taken against him until the review period was over. However, the facts as alleged in the complaint are that when the Board initially terminated Mr. Kando, it promised that if he took classes according to its terms, at the end of the third semester it would conduct a review of his working relationship with the Board and of his role as Executive Director. There was no implied contract for continued employment here.

Mr. Kando also likens the Board's promise to a unilateral contract, but this does not help his case. A unilateral contract allows one person to make a promise in exchange for the other person completing an act. But, in this case, Mr. Kando did not enroll in management classes by January 31st and did not complete the coursework by the August 31st meeting. He did not complete the act, and as a result, the Board essentially withdrew its offer. The Board set its terms and Mr. Kando could either perform according to its terms or accept the termination. He failed to perform so there was no contract to create a property interest.

### 3. Property Interest Created by Rule or Policy

So finally, we turn to whether the option given to Mr. Kando to take classes in an effort to keep his job was a Board rule, which created a property right. There is no allegation that the Board has a rule or policy on this. Mr. Kando has not alleged that the Board was in the habit of making this sort of a deal or that it was well known

8

that no employee is ever fired without being given a second chance or a chance to obtain extra training. Moreover, even if there was an unofficial understanding that all employees get this second chance, Mr. Kando cannot allege that he could have reasonably expected to retain his job based on the promise – he was told that if he took a certain number of management credits, his employment status would be reviewed. The Board never promised him his job back. He may be able to allege that he expected the Board to allow him to finish the coursework and present his progress before the Board for its review and consideration, but that does not create a property interest.

Mr. Kando was an at-will employee without a due process property interest in his employment. In addition, nothing about the circumstances of his case changes that analysis. No statute or ordinance created a property interest and nothing about the way the Board operated in terms of habit or rule created a legal expectation of continued employment in Mr. Kando's case. Moreover, no contract was formed during this process, as there was no mutual agreement on either the terms or the ultimate promise.[4]

B. Remaining State Claims

Now that the Court has determined that Mr. Kando does not have a federal claim under § 1983, what remains are three state law claims under the Rhode Island

---

[4] Mr. Kando also argues that due process entitled him to a name-clearing hearing since his termination was so messy. The argument against this is the same – he had no due process rights as an unclassified, at-will employee. Moreover, he did have a hearing on January 11, March 16, and August 31, 2016.

Open Meetings Act; Article I, Section 2 of the Rhode Island Constitution; and the Rhode Island Whistleblowers Protection Act. The Court must consider whether to retain jurisdiction over these state claims.

"A federal court exercising original jurisdiction over federal claims also has 'supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998) (quoting 28 U.S.C. § 1367(a) (West 1993)). When a case has been removed to federal court and the federal claim is disposed of before trial, it is within this Court's discretion to decide whether to keep the remaining state law claims or remand them. 28 U.S.C. § 1367(c). The Court must consider the interests of fairness, judicial economy, convenience, and comity, *Camelio*, 137 F.3d at 672, as well as whether the remaining claims "raise[] a novel or complex issue of State law" or if they "substantially predominate[]" over the dismissed claim. 28 U.S.C § 1367(c). Supplemental jurisdiction allows the district court to simultaneously adjudicate all state law claims that are "so related" to the federal claim that they form a part of the "same case or controversy." However, "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation." *Camelio*, 137 F.3d at 672 (citing *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995)).

The Court declines to exercise discretion supplemental jurisdiction over Mr. Kando's remaining state law claims. Based on the allegations in his complaint, the Court finds that the claims raise novel issues of state law, specifically whether the Rhode Island Constitution allows a private right of action and how to calculate the statute of limitations under the Rhode Island Open Meetings Act. Therefore, in the interest of comity and lack of independent jurisdiction. The federal court will not assume jurisdiction over these remaining state-only claims. They are best brought and decided in state court.

The Court GRANTS Defendants' Motion to Dismiss (ECF No. 28) and dismisses Mr. Kando's federal claim with prejudice and his state-laws claims without prejudice.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

June 5, 2017